RENDERED: OCTOBER 20, 2016
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

2015-SC-000700-MR
AND
2015-SC-000701-MR

DATE 11/10/16 Kim Redmon, DC

PAUL T. ELAM JR                                                           APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.              HONORABLE JOHN L. ATKINS, JUDGE
NO. 13-CR-00680, 14-CR-00438

COMMONWEALTH OF KENTUCKY                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**

Appellant, Paul T. Elam, appeals from a judgment of the Christian Circuit Court convicting him of fifteen counts of first degree sodomy, thirteen counts of first degree sexual abuse, and two counts of witness tampering. As a result of these convictions, Appellant was sentenced to a total of seventy years in prison.

Appellant contends that the trial court erred by overruling his motion to sever Count No. 33 of the indictment from the remaining charges and by granting the Commonwealth's motion to consolidate for a single trial the sexual offenses and the witness tampering charges. He also argues that his due process rights were violated because the indictment contained numerous

indistinguishable, identically-phrased charges which, in turn, resulted in a violation of his constitutional right to a unanimous verdict pursuant to the standards as set forth in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013).

Upon review of the issues raised by Appellant, we affirm the judgment of the Christian Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kristen Elam is Appellant's ex-wife and the mother of victims Brenda and Mary.[1] Appellant is Mary's biological father and during his marriage to Kristen, he was Brenda's step-father. After his divorce from Kristen, Appellant maintained a paternal relationship with Brenda. Kristen had custody of Mary and Brenda during the relevant time period, but both girls visited regularly with Appellant and his current wife, Meagan.

In November 2013, seven-year old Mary told her mother, Kristen, and her step-mother, Meagan, that Appellant had fondled her vagina by putting his hand under her clothes. That disclosure prompted Kristen and Meagan to ask eleven-year-old Brenda if anything improper had occurred between her and Appellant. Brenda disclosed that Appellant began engaging in sexual acts with her when she was seven years old and that the abuse continued until the present time. Brenda said that Appellant forced her to stimulate his genitalia,

---

[1] Pseudonyms are used to protect the privacy of the juveniles and victims of alleged crimes.

orally and manually, and that he had imposed oral sex on her and fondled her breasts.

These allegations led to Appellant's indictment on thirty-two counts of first degree sodomy committed against Brenda (Counts 1-32); one count of first degree sexual abuse committed against Mary (Count 33); and thirty-two counts of first degree sexual abuse against Brenda (Counts 34-65). The sixty-four charges pertaining to Brenda allegedly occurred between May 2011 and November 2, 2013. The sexual abuse of Mary allegedly occurred between October 31, 2013 and November 2, 2013.

While in jail awaiting trial, Appellant sent a letter to Meagan asking her to try to prevent Mary and Brenda from testifying against him. As a result of the letter, Appellant was indicted on two counts of witness tampering.[2] Over Appellant's objection, the trial court granted the Commonwealth's motion to consolidate the witness tampering charges with the sex offenses for purposes of a trial. Appellant also sought to have Count 33, the only charge relating to Mary, severed from the other sixty-four counts involving Brenda. The trial court denied this motion, and all charges were tried together.

Before the submission of the case to the jury, thirty-seven counts of the indictment were dismissed. The case went to the jury on fifteen counts of first

---

[2] KRS 524.050(1) provides: "A person is guilty of tampering with a witness when, knowing that a person is or may be called as a witness in an official proceeding, he: (a) Induces or attempts to induce the witness to absent himself or otherwise avoid appearing or testifying at the official proceeding with intent to influence the outcome thereby; or (b) Knowingly makes any false statement or practices any fraud or deceit with intent to affect the testimony of the witness."

degree sodomy, all involving Brenda; thirteen counts of first degree sexual abuse, twelve relating to Brenda and one relating to Mary; and two counts of witness tampering. The jury convicted Appellant of all counts. These appeals followed.[3]

## II. CONSOLIDATION AND SEVERANCE ISSUES

Appellant's first argument regarding the consolidation of charges consists of two parts: 1) he claims that the trial court erred by denying his motion to sever the trial of the single count involving Mary from the trial of the remaining sixty-four sexual offenses involving Brenda; and 2) he contends that the trial court erred by granting the Commonwealth's motion to consolidate for trial all of the sexual offenses and the two witness tampering charges.

We begin our analysis of these issues with a brief restatement of the applicable rules of joinder and severance, and a review of how those rules function together. RCr 6.18 defines the circumstances in which separate acts of criminal conduct can be properly joined together in a single indictment or information. It allows for joinder of offenses in the same indictment only when the offenses are 1) "of the same or similar character" or 2) "are based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

---

[3] For reasons that remain unclear, perhaps because there are two separate indictments consolidated into a single trial and a single judgment, Appellant filed two notices of appeal; two appellate files were opened, and two essentially identical sets of briefs were filed in each case. When there is but one judgment relating to multiple indictments, as here, it is unnecessary to file two notices of appeal.

RCr 9.12 defines the circumstances in which charges contained in two or more different indictments may be consolidated for a single trial. RCr 9.12 allows for the consolidation of separate indictments for a single trial only if the individual charges properly "could have been joined in a single indictment." RCr 9.12 indirectly incorporates the standard of RCr 6.18.

RCr 8.31, which at the time of Appellant's trial was codified as RCr 9.16, sets no parameters for the proper joinder or consolidation of different charges; it does the opposite. RCr 8.31 (formerly RCr 9.16) mandates the separation (or severance) of charges otherwise properly joined under RCr 6.18 or indictments properly consolidated under RCr 9.12. It states that "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . . in an indictment . . . or by joinder for trial, the court shall order separate trials of counts . . . or provide whatever other relief justice requires." In other words, a joinder or consolidation of offenses for a single trial cannot be justified by the provisions of RCr 8.31. RCr 8.31 sets the standard for the severance or separation of charges otherwise properly joined or consolidated.

As we stated in *Cherry v. Commonwealth*, "Even if the requirements of Criminal Rule 6.18 are met, the trial court should nevertheless order the offenses be tried separately if joinder would be prejudicial to either the defendant or the Commonwealth." 458 S.W.3d 787, 793 (Ky. 2015). "Under RCr 9.16 [now RCr 8.31] a defendant must prove that joinder would be so prejudicial as to be unfair or unnecessarily or unreasonably hurtful." *Ratliff v.*

5

*Commonwealth*, 194 S.W.3d 258, 264 (Ky. 2006) (citations and internal quotes omitted).

Whether the prejudicial effect of an otherwise proper joinder of offenses meets the "unfair or unnecessarily or unreasonably hurtful" threshold is a matter that rests with the sound discretion of the trial judge. "A trial judge has broad discretion in ruling on an RCr 9.16 [now RCr 8.31] motion, and that determination will not be overturned on appeal unless an abuse of discretion is shown." *Id.* (citations omitted). We "will not overturn a trial court's joinder determination absent a showing of actual prejudice and a clear abuse of discretion. We must be clearly convinced that prejudice occurred and that the likelihood of prejudice was so clearly demonstrated to the trial judge that the refusal to grant a severance was an abuse of discretion." *Murray v. Commonwealth*, 399 S.W.3d 398, 405 (Ky. 2013) (citations omitted).

As further explained below, under the facts and circumstances present here, we are persuaded that the trial court did not abuse its discretion by denying Appellant's motion to sever Count 33 from the other sexual misconduct charges or by joining the tampering indictment with the sexual misconduct indictment for purposes of trial. We first consider the consolidation of the witness tampering charges with the sexual misconduct charges.

## A. Consolidating the indictment for sexual offenses with the indictment for tampering with witnesses for trial was proper.

Appellant's charges of tampering with a witness stem from the letter he sent to his wife asking her to attempt to dissuade the children from testifying.

6

Those charges arose *after* he had been indicted for the sexual offenses so they necessarily are set forth in a separate indictment. As noted above, RCr 9.12 sets the standard for consolidating the charges of separate indictments for a single trial. Two or more indictments may be tried together "if the offenses . . . could have been joined in a single indictment, information, complaint or uniform citation." The standard for joining different criminal acts into a single indictment is established by RCr 6.18. Different criminal acts may be joined as separate counts in the same indictment if the offenses are "of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." Consequently, crimes charged in different indictments may be consolidated for trial if they are "of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

At least in the factual context of this case, the conduct alleged as Appellant's crime of unlawfully tampering with witnesses is not "of the same or similar character" as the conduct underlying the sodomy and sexual abuse charges.[4] The only avenue for the proper consolidation of offenses in this case is if they are "based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

---

[4] We do not dismiss the possibility that in other factual circumstances actions that constitute tampering with a witness might be "of the same or similar character" as sexual acts constituting other criminal offenses.

Construing this language, we said in *Peacher v. Commonwealth*, 391 S.W.3d 821, 837 (Ky. 2013), that joinder of different offenses requires

> a sufficient nexus between or among them to justify a single trial.
> . . . [T]he required nexus [arises] from a 'logical' relationship between them, some indication that they arose one from the other or otherwise in the course of a single act or transaction, or that they both arose as parts of a common scheme or plan.

Here, we see a direct nexus linking the underlying sexual offenses and the tampering charges. The charges of tampering with witnesses plainly arose from Appellant's alleged attempt to persuade Mary and Brenda not to testify against him on the sexual charges, providing an extraordinarily direct logical connection that links the tampering with witness charges to the sexual offenses against both Mary and Brenda. RCr 6.18 allows for the joinder of these charges in these circumstances in a single indictment as "transactions connected together or constituting parts of a common scheme or plan." The only remaining question is whether this otherwise proper consolidation of offenses was impermissibly prejudicial under RCr 8.31 (formerly RCr 9.16), thus mandating separate trials.

"The primary test for determining if the consolidation of different crimes for a single trial creates undue prejudice is whether evidence necessary to prove each offense would have been admissible in a separate trial of the other." *Roark v. Commonwealth*, 90 S.W.3d 24, 28 (Ky. 2002) (citations omitted). This test is easily satisfied in this case because the circumstances of Appellant's alleged sexual crimes would be admissible in a separate trial for tampering

with the witness under the "inextricably intertwined" prong of KRE 404(b)(2).[5] Likewise, Appellant's alleged effort to tamper with witnesses would be admissible in a separate trial of the sexual offenses because it indicates consciousness of guilt. *Tamme v. Commonwealth*, 973 S.W.2d 13, 29–30 (Ky. 1998) (citations omitted) ("Any attempt to suppress a witness' testimony by the accused, whether by persuasion, bribery, or threat, or to induce a witness not to appear at the trial, or to swear falsely, or to interfere with the process of the court is evidence tending to show guilt.").

Frequently, for all of the advantages of consolidating charges cited in *Peacher*,[6] joining a charge of tampering with a witness with the trial of the underlying charge will not only be proper, but may also be preferable. Accordingly, we agree that the trial court did not abuse its direction by

---

[5] KRE 404(b) evidence of "other crimes, wrongs, or acts," otherwise inadmissible under the provisions of KRE 404, may nevertheless be admissible when they are "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2).

[6] "The advantages of joint trials, whether of multiple charges or multiple defendants, are obvious. Trials are costly and burdensome to courts, parties, witnesses, and victims, so the savings from resolving a matter in a single trial rather than two or more separate trials are significant. This seems especially so when the evidence for separate counts will overlap to a considerable extent. It seems wasteful to require the Commonwealth to put on the same proof multiple times, to require witnesses to attend and give the same testimony at different trials, and to require separate juries to consider substantially identical evidence. Joinder also helps assure that defendants are tried for their alleged offenses in a timely manner. A joint trial, moreover, by allowing a single jury to pass on all the charges and to hear all the evidence, minimizes the risk of inconsistent verdicts. Given these many advantages, RCr 6.18 provides for the liberal joinder of offenses." *Peacher v. Commonwealth*, 391 S.W.3d 821, 836–37 (Ky. 2013).

9

granting the Commonwealth's motion to consolidate the two indictments for a single trial.

**B. The trial court did not abuse its discretion when it refused to sever the trial of Count 33 from the trial of the other counts of the sexual abuse and sodomy indictment.**

Of the 65 individual counts charged in the first indictment, all but one of the alleged crimes was against Brenda. Only Count 33 alleged that Appellant committed a crime against Mary. Appellant filed a pretrial motion to sever the trial of Count 33 from the remaining counts. The trial court denied the motion. Argument that the joinder of Count 33 with the remaining counts violated RCr 6.18, and the trial court's failure to separate the trial of Count 33 from the other charges violated RCr 9.16 (now RCr 8.31).

In support of this argument, Appellant contends that in a trial of the 64 crimes against Brenda, evidence of the single crime against Mary would be inadmissible under KRE 404(b). The joinder of the offenses, he contends, was unduly prejudicial as it allowed the jury to know that two daughters accused him of sexual abuse, not just one.

We are unpersuaded that the trial court abused its discretion when it permitted the charge involving Mary to be tried together with those involving her step-sister, Brenda. As noted above, two crimes are properly tried together "if the offenses are of the same or similar character or . . . connected together or constituting parts of a common scheme or plan." RCr 6.18. The crime against Mary was clearly "of the same or similar character" as the crimes involving Brenda. They are logically connected in the sense that the disclosure

10

of the former led directly to the discovery of the latter. All of the crimes alleged in the indictment charged sexual activities by a father/step-father against his daughter/step-daughter, and both instances began when the victim was about seven-years-old. The multitude of alleged crimes can also be considered to be connected together as "parts of a common scheme or plan," specifically Appellant's continuing scheme to obtain sexual gratification by engaging in sexual acts with easily accessible and vulnerable victims: little girls who depended upon him and regularly stayed at his home.

Appellant's letter to Meagan that forms the basis of both charges of tampering with a witness relates to both of the victims. Parsing it out in separate trials, one for each of the witnesses affected, would be impractical, but more importantly, under the factual circumstances here, it is unnecessary.

Appellant relies upon the holding from *Roark* cited above, and the similar analysis in *Rearick v. Commonwealth*, 858 S.W.2d 185, 187 (Ky. 1993), to support his claim that KRE 404(b) would not support the reciprocal admission of the sexual acts against both girls in separate trials. We are satisfied that KRE 404(b) would not stand as a barrier to the admission of the crime against Mary in the trial of the crimes against Brenda and vice versa.

The 404(b) rule is subject to several exceptions identified in the rule itself[7] and as authorized by our common law holdings. The same

---

[7] KRE 404 (b) states: "Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible: (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or (2) If so inextricably

circumstances that justified the joinder of the charges in the first place (appellant's scheme or plan of using vulnerable, easily accessible young girls within his household for sexual gratification, and the logical connection between the two sets of charges), also support the mutual admission of the charges as an exception to KRE 404(b)(2). In fact, *Rearick* holds that a child victim in a sexual abuse case could testify that he had seen his father, the defendant, sodomizing his younger brother because that evidence indicated a common scheme or plan. 858 S.W.2d at 188. Upon application of this same analysis, we reach the conclusion that separate trials would not have spared Appellant the detrimental effect he cites as error. Thus, we cannot conclude that he was unduly prejudiced by the trial court's refusal to sever the charges for separate trials.

In summary, the trial court did not abuse its discretion in denying Appellant's motion to sever the charges involving Mary from the charges involving Brenda or in granting the Commonwealth's motion to join for a single trial the indictment alleging witness tampering with the indictment alleging sexual crimes against Brenda and Mary.

## III.   UNANIMOUS VERDICT AND DUPLICITOUS INDICTMENT ISSUES

Appellant's second argument also has two components. First, he complains that the indictment was duplicitous in that all thirty-two sodomy

---

intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party."

12

counts contained therein are identical, with absolutely no distinctions between them, as are the thirty-two counts of sexual abuse allegedly committed against Brenda. Second, he contends that the jury instructions reiterated the error and thus violated his right to a unanimous verdict, as set out in *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013). Appellant concedes that neither argument is preserved but requests palpable error review. We first consider the unanimous verdict issue.

## A. The jury instructions did not violate Appellant's right to a unanimous verdict.

Citing *Johnson*, Appellant contends that his right to a unanimous verdict was violated due to "flawed jury instructions." "Section 7 of the Kentucky Constitution requires a unanimous verdict . . . ." *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978). A violation of this provision may occur in several ways; however it may be stated as a general principle that a violation occurs when a verdict is returned based upon jury instructions and verdict forms that provide no assurance that all of the jurors based their finding of guilt on the same event. *Johnson*, 405 S.W.3d at 449; *Ruiz v. Commonwealth*, 471 S.W.3d 675, 678 (Ky. 2015).

Appellant fails to fully develop his argument with an explanation of how the jury instructions in this case failed to differentiate among the multiple counts of sexual crimes. Contrary to Appellant's assertion, an examination of the instructions discloses that the instructions did, indeed, carefully differentiate among the multiple charges by identifying singularly distinctive

circumstances associated with each of the individual events underlying each count presented in the instructions. The jury's verdicts leave no doubt that each juror agreed upon each specific charge in the instructions, and that the same charge was not presented twice. Appellant's unanimous verdict argument is based upon a flawed premise, and contrary to his arguments, the trial court's instructions to the jury carefully followed the unanimous verdict mandates set forth in *Johnson, Ruiz,* and other cases addressing the issue.[8]

## B. Appellant waived any objections to deficiencies in the form of the indictment by failing to present a timely objection.

Appellant contends that the indictment handed down in this case was duplicitous because it combined multiple separate acts of sexual misconduct into a single description. A duplicitous indictment is "the joining in a single count of two or more distinct and separate offenses." *Ruiz,* 471 S.W.3d at 680 (citing *Johnson,* 405 S.W.3d at 453) (quoting *United States v. Starks,* 515 F.2d

---

[8] It is worth noting that with the passage of 2016 Ky. Acts ch. 83, § 1, effective April 9, 2016, now codified as KRS 501.100, the legislature, as suggested by this Court on a number of occasions, *see e.g., Ruiz,* 471 S.W.3d at 679, addressed a persistent problem in prosecuting multiple sexual offenses committed against a young child victim (and other vulnerable victims), when evidence differentiating one illegal act from another is difficult to obtain, by permitting the multiple crimes to be charged as a single "continuing course of conduct" crime. However, under KRS 501.100(5), "[i]f a person is convicted of an offense against a vulnerable victim in a continuing course of conduct, that person may not also be convicted of charges based on the individual unlawful acts that were part of the continuing course of conduct." The penalty, probation and parole eligibility, and other consequences of an offense charged as a continuing course of conduct "shall be the same as for the offense when charged based on an individual act." KRS 501.100(6). Thus, while KRS 501.100 presents an important option for prosecutors when charging multiple sexual offenses against a single victim, implementing the option created by the legislature precludes the imposition of multiple sentences that would otherwise be available when multiple individual counts are charged.

14

112, 116 (3d Cir. 1975)). "In other words, a duplicitous count includes in a single count what must be charged in multiple counts." *Id.* (citing *Johnson,* 405 S.W.3d at 453).

Here all of the thirty-two sodomy charges relating to Brenda were worded identically, as were each of the thirty-two sexual abuse charges. As we said in *Ruiz,* 471 S.W.3d at 680, we do not approve of indistinguishable counts in an indictment, but seldom will we need to determine such counts are duplicitous or otherwise in violation of the provisions of RCr 6.10 and RCr 6.18 requiring a "separate count for each offense." Appellant never raised the issue in the trial court. A defendant is deemed to have "waived any defects in his indictment by not bringing those defects to the attention of the trial judge." *Thomas v. Commonwealth,* 931 S.W.2d 446, 450 (Ky. 1996); *see* RCr 8.18(1) ("[T]he following shall be raised before trial: . . . b) a motion alleging a defect in the indictment or information . . . .").

Moreover, our rules provide a remedy for the defendant who is unable to prepare a defense because he cannot differentiate among a multitude of indistinguishable charges. RCr 6.22 provides for a bill of particulars. Appellant never requested a bill of particulars. "If the defendant is not sufficiently informed by the indictment [of the precise nature of each charge lodged against him] an adequate remedy is at his disposal [under RCr 6.22], and if he chooses not to avail himself of it he will be considered as having waived the defect." *Strong v. Commonwealth,* 507 S.W.2d 691, 694 (Ky. 1974).

15

Accordingly, no manifest injustice occurred as a result of the duplicitous indictment. Appellant is not entitled to relief under this argument.

## IV.CONCLUSION

For the foregoing reasons, the judgment of the Christian Circuit Court is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Stephanie Dawn Ritchie
Fry & Ritchie

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General

16